# UNITED STATES DISTRICT COURT
## DISTRICT OF NORTH DAKOTA
### WESTERN DIVISION

| | |
|---|---|
| ENERGY TRANSFER LP, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| | ) CIVIL ACTION FILE |
| v. | ) NO. 1:19-cv-00049-DLH-ARS |
| | ) |
| GREENPEACE INTERNATIONAL, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Derrick Braaten, ND Bar # 06394
BRAATEN LAW FIRM
109 North 4th Street, Suite 100
Bismarck, ND 58501
701-221-2911
derrick@braatenlawfirm.com

Lacy H. Koonce, III (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
(212) 603-6467
lancekoonce@dwt.com

Laura Handman (*pro hac vice*)
Lisa Zycherman (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, DC 20006-2401
(202) 973-4200
laurahandman@dwt.com
lisazycherman@dwt.com

*Attorneys for Defendants Greenpeace International, Greenpeace, Inc., and Charles Brown*

April 12, 2019

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................ 1

II.    BACKGROUND ........................................................................................................ 6

     A.     Parties .......................................................................................................... 6

         1.     Greenpeace Entities ........................................................................ 6

         2.     Charles Brown ................................................................................ 7

         3.     Plaintiff ......................................................................................... 7

         4.     Other Parties and Non-Parties ........................................................ 7

     B.     The Original Federal Claim ........................................................................ 8

     C.     Procedural History ...................................................................................... 9

III.    ARGUMENT .......................................................................................................... 10

     A.     The Complaint Should Be Dismissed For Failure to State a Claim ..................... 10

         1.     Applicable Pleading Standards and Choice of Law ................................. 10

         2.     Plaintiff Fails to Plead a Plausible Claim for Defamation ....................... 12

             a.     Traditional Advocacy is Protected by the First Amendment ................. 12

             b.     Failure to Plead Statements With Specificity ......................... 14

             c.     Greenpeace's Challenged Statements Are Protected Opinion ............... 15

             d.     Plaintiff Cannot Plausibly Plead Statements Made With Actual Malice ....................................................................... 23

             e.     Greenpeace's Statements Are Privileged ............................... 28

         3.     The Tortious Interference Claims Should Be Dismissed ......................... 29

         4.     The Trespass Claims Should Be Dismissed ................................... 32

         5.     The Conversion Claims Should Be Dismissed ......................... 33

         6.     The Conspiracy Claim Should Be Dismissed ......................... 34

     B.     The Court Should Dismiss GPI and Charles Brown for Lack of Jurisdiction Pursuant to Rule 12(b)(2) ...................................................... 35

IV.    CONCLUSION ...................................................................................................... 37

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbas v. Foreign Policy Grp., LLC*,
    783 F.3d 1328 (D.C. Cir. 2015) ..........................................................................16

*Adelson v. Harris*,
    402 P.3d 665 (Nev. 2017) ...................................................................................29

*Adelson v. Harris*,
    876 F.3d 413 (2d Cir. 2017)................................................................................29

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................10, 25

*Atkinson v. McLaughlin*,
    462 F. Supp. 2d 1038 (D.N.D. 2006)..............................................................29, 30

*Avery v. Ward*,
    2017 WL 5451743 (D.N.D. Nov. 15, 2017) .....................................................10, 35

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................25

*Beverly Hills Foodland, Inc. v. United Food & Commercial Workers Union,*
    *Local 655*,
    39 F.3d 191 (8th Cir. 1994) ................................................................................30

*Biro v. Conde Nast*,
    807 F.3d 541 (2d Cir. 2015)................................................................................14

*Biro v. Conde Nast*,
    963 F. Supp. 2d 255 (S.D.N.Y. 2013)..................................................................25

*Bothuell v. Grace*,
    2017 WL 892343 (E.D. Mich. Feb. 16, 2017), *report and recommendation*
    *adopted sub nom. Bothuell v. Grace*, 2017 WL 878026 (E.D. Mich. Mar. 6,
    2017) ...................................................................................................................28

*Brodkorb v. Minn.*,
    2013 WL 588231 (D. Minn. Feb. 13, 2013) .........................................................22

*Brown & Williamson Tobacco Corp. v. Jacobson*,
    713 F.2d 262 (7th Cir. 1983) ..............................................................................24

*Buri v. Ramsey*,
    693 N.W.2d 619 (N.D. 2005) ..................................................................33

*CACI Premier Tech. v. Rhodes*,
    536 F.3d 280 (4th Cir. 2008) ..................................................................26

*Campbell v. Citizens for an Honest Gov't, Inc.*,
    255 F.3d 560 (8th Cir. 2001) ...........................................................15, 27

*Catchai v. Fort Morgan Times*,
    2015 WL 6689484 (D. Colo. Nov. 3, 2015), *judgment entered*, 2015 WL
    6689485 (D. Colo. Nov. 3, 2015) ...........................................................28

*Chaker v. Mateo*,
    209 Cal. App. 4th 1138 (2012) ........................................................21, 22

*Citizens Against Rent Control/Coal. for Fair Hous. v. Berkeley*,
    454 U.S. 290 (1981)..................................................................................13

*Compuware Corp. v. Moody's Inv'rs Servs.*,
    499 F.3d 520 (6th Cir. 2007) ..................................................................24

*Container Mfg. Inc. v. CIBA-GEIGY Corp.*,
    870 F. Supp. 1225 (D.N.J. 1994) ............................................................23

*DakColl, Inc. v. Grand Cent. Graphics, Inc.*,
    352 F. Supp. 2d 990 (D.N.D. 2005)........................................................35

*Deripaska v. Associated Press*,
    2017 WL 4685297 (D.D.C. Oct. 17, 2017) .............................................25

*Deupree v. Iliff*,
    860 F.2d 300 (8th Cir. 1988) ..................................................................19

*Diario El Pais, S.L. v. Nielsen Co. (US)*,
    2008 WL 4833012 (S.D.N.Y. Nov. 6, 2008)...........................................25

*DMC Plumbing & Remodeling, LLC v. Fox News Network, LLC*,
    2012 WL 5906870 (E.D. Mich. Nov. 26, 2012) ......................................28

*Dodds v. Am. Broad. Co.*,
    145 F.3d 1053 (9th Cir. 1998) .................................................................16

*Doe v. Salisbury Univ.*,
    123 F. Supp. 3d 748 (D. Md. 2015)........................................................25

*Dundon v. Kirchmeier*,
  2017 WL 5894552 (D.N.D. Feb. 7, 2017), *aff'd*, 701 F. App'x 538 (8th Cir.
  2017) ..................................................................................................................................8

*Egiazaryan v. Zalmayev*,
  2011 WL 6097136 (S.D.N.Y. Dec. 7, 2011) ..........................................................25

*Energy Transfer Equity, LP v. Greenpeace Int'l*,
  No. 1:17-CV-00173-BRW, 2018 WL 4677787 (D.N.D. July 24, 2018) ................36

*Fairbanks v. Roller*,
  314 F. Supp. 3d 85 (D.D.C. 2018) ..................................................................25, 26

*Farah v. Esquire Magazine*,
  736 F.3d 528 (D.D.C. 2014) .....................................................................14, 16, 30

*Flowers v. Carville*,
  310 F.3d 1118 (9th Cir. 2002) .............................................................................26

*Garrison v. Louisiana*,
  379 U.S. 64 (1964) ...............................................................................................25

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974) ................................................................................16, 23, 24

*GetFugu, Inc. v. Patton Boggs LLP*,
  220 Cal. App. 4th 141 (2013) ...............................................................................21

*Global Relief Found. v. N.Y. Times Co.*,
  2002 WL 31045394 (N.D. Ill. Sept. 11, 2002) .....................................................11

*Gubarev v. Buzzfeed*,
  Case 0:17-cv-60426-UU, ECF No. 171 (S.D. Fla. June 5, 2018) ..........................11

*Hanks v. Wavy Broad., LLC*,
  2012 WL 405065 (E.D. Va. Feb. 8, 2012) .............................................................25

*Hargrave v. Washington Post*,
  2009 WL 1312513 (D.D.C. May 12, 2009), *aff'd*, 365 F. App'x 224 (D.C. Cir.
  2010) ...................................................................................................................28

*Hill v. Cosby*,
  665 F. App'x 169 (3d Cir. 2016) ...........................................................................16

*Humann v. KEM Elec. Coop.*,
  450 F. Supp. 2d 1006 (D.N.D. 2006), *aff'd*, 497 F.3d 810 (8th Cir. 2007) ......15, 28

*Hutchinson v. Proxmire*,
   443 U.S. 111 (1979) ............................................................................................24

*Jacobus v. Trump*,
   55 Misc. 3d 470, 51 N.Y.S.3d 330 (N.Y. Sup. Ct. ), *aff'd*, 2017 N.Y. Slip Op.
   (1st Dep't Dec. 21, 2017) ...................................................................................21

*Janklow v. Newsweek, Inc.*,
   759 F.2d 644 (8th Cir. 1985) .............................................................................27

*Janklow v. Newsweek, Inc.*,
   788 F.2d 1300 (8th Cir. 1986) ...................................................................19, 20

*Kahl v. Bureau of Nat'l Affairs, Inc.*,
   856 F.3d 106 (D.C. Cir.) (Kavanaugh, J.) .................................................25, 28

*Klayman v. City Pages*,
   2015 WL 1546173 (M.D. Fla. Apr. 3, 2015), *aff'd*, 2016 WL 3033141 (11th
   Cir. May 27, 2016) .............................................................................................26

*Koch v. Goldway*,
   817 F.2d 507 (9th Cir. 1987) ......................................................................20, 21

*Kuhn v. Chesapeake Energy Corp.*,
   2012 WL 4442798 (D.N.D. Sept. 25, 2012) .......................................................34

*Lakin v. Prudential Securities, Inc.*,
   348 F.3d 704 (8th Cir. 2003) .............................................................................35

*Lee v. TMZ Prods., Inc.*,
   2017 WL 4675710 (3d Cir. Oct. 17, 2017) ........................................................28

*Levin v. McPhee*,
   119 F.3d 189 (2d Cir. 1997) ..............................................................................16

*Liberty Lobby, Inc. v. Dow Jones & Co.*,
   838 F.2d 1287 (D.C. Cir. 1988) .........................................................................26

*Lohrenz v. Donnelly*,
   350 F.3d 1272 (D.C. Cir. 2003) .........................................................................25

*Magee v. Trustees of Hamline Univ., Minn.*,
   747 F.3d 532 (8th Cir. 2014) .............................................................................10

*Mayfield v. NASCAR, Inc.*,
   674 F.3d 369 (4th Cir. 2012) ......................................................................14, 25

*McDonald v. Wise*,
　769 F.3d 1202 (10th Cir. 2014) .......................................................................14

*McFarlane v. Sheridan Square Press, Inc.*,
　91 F.3d 1501 (D.C. Cir. 1996) ........................................................................28

*Miami Herald Publ'g v. Tornillo*,
　418 U.S. 241 (1974) .........................................................................................28

*Michaelis v. CBS, Inc.*,
　119 F.3d 697 (8th Cir. 1997) ...........................................................................29

*Michel v. NYP Holdings, Inc.*,
　816 F.3d 686 (11th Cir. 2016) .........................................................................14

*Milkovich v. Lorain Journal Co.*,
　497 U.S. 1 (1990) .............................................................................................16

*Montgomery v. Risen*,
　197 F. Supp. 3d 219 (D.D.C. 2016), *aff'd on other grounds*, 875 F.3d 709
　(D.C. Cir. 2017) ...............................................................................................27

*Moses.com Sec., Inc. v. Comprehensive Software Sys.*,
　406 F.3d 1052 (8th Cir. 2005) .........................................................................16

*Mott v. Anheuser-Busch, Inc.*,
　910 F. Supp. 868 (N.D.N.Y. 1995), *aff'd*, 112 F.3d 504 (2d Cir. 1996) ................23

*NAACP v. Alabama ex rel. Patterson*,
　357 U.S. 449 (1958) .........................................................................................12

*NAACP v. Claiborne Hardware Co.*,
　458 U.S. 886 (1982) ....................................................................................12, 13

*Napoleon Livestock Auction, Inc. v. Rohrich*,
　406 N.W.2d 346 (N.D. 1987) ..........................................................................33

*New York Times Co. v. Sullivan*,
　376 U.S. 254 (1964) ..............................................................................16, 20, 28

*Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*,
　111 F.3d 1386 (8th Cir. 1997) .........................................................................24

*Ollman v. Evans*,
　750 F.2d 970 (D.C. Cir. 1984), *cert. denied*, 471 U.S. 1127 (1985) .......................20

*Others First, Inc. v. Better Bus. Bureau of Greater St. Louis, Inc.*,
　829 F.3d 576 (8th Cir. 2016) ......................................................................16, 17

*Pan Am. Sys., Inc. v. Hardenbergh*,
　　871 F. Supp. 2d 6 (D. Me. 2012) ........................................................25

*Parisi v. Sinclair*,
　　845 F. Supp. 2d 215 (D.D.C. 2012) ....................................................25

*Pauling v. Globe-Democrat Publ'g Co.*,
　　362 F.2d 188 (8th Cir. 1966) ..............................................................27

*Pippen v. NBCUniversal Media, LLC*,
　　734 F.3d 610 (7th Cir. 2013) ..............................................................14

*Polensky v. Continental Cas. Co.*,
　　397 F. Supp. 2d 1164 (D.N.D. 2005)..................................................10

*Price v. Viking Penguin, Inc.*,
　　881 F.2d 1426 (8th Cir. 1989) ............................................................19

*Protect of Mountain Env't, Inc. v. District Ct.*,
　　677 P.2d 1361 (Colo. 1984)..................................................................1

*Ragland v. Blue Cross Blue Shield of N.D.*,
　　2012 WL 5511006 (D.N.D. Nov. 14, 2012) .......................................14

*Reliance Ins. Co. v. Barron's*,
　　442 F. Supp. 1341 (S.D.N.Y. 1977)....................................................24

*Resolute Forest Prod., Inc. v. Greenpeace Int'l*,
　　No. 17-CV-02824-JST, 2019 WL 281370 (N.D. Cal. Jan. 22, 2019) ..............................12, 22

*Resolute Forest Prods., Inc. v. Greenpeace Int'l*,
　　302 F. Supp. 3d 1005 (N.D. Cal. 2017) ....................................... *passim*

*Riemers v. Mahar*,
　　748 N.W.2d 714 (N.D. 2008) .............................................................24

*Riley v. Harr*,
　　292 F.3d 282 (1st Cir. 2002) ...............................................................18

*Schatz v. Republican State Leadership Comm.*,
　　669 F.3d 50 (1st Cir. 2012) ...........................................................14, 25

*Schuster v. U.S. News & World Report, Inc.*,
　　602 F.2d 850 (8th Cir. 1979) ..............................................................19

*Secrist v. Harkin*,
　　874 F.2d 1244 (8th Cir. 1989) ..............................................16, 19, 20

*Snyder v. Phelps*,
 562 U.S. 443 (2011) .......................................................................................12

*Soentgen v. Quain & Ramstad Clinic, P.C.*,
 467 N.W.2d 73 (N.D. 1991) .....................................................................27, 28

*St. Amant v. Thompson*,
 390 U.S. 727 (1968) .................................................................................23, 24

*Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*,
 255 F. Supp. 3d 101 (D.D.C. 2017) ..........................................................8, 17

*Stepnes v. Ritschel*,
 663 F.3d 952 (8th Cir. 2011) ....................................................................15, 24

*Summit Bank v. Rogers*,
 206 Cal. App. 4th 669 (2012) .......................................................................21

*Sura v. National Oilwell Varco, L.P.*,
 2016 WL 4217766 (D.N.D. Apr. 6, 2016) ....................................................11

*Tavoulareas v. Piro*,
 817 F.2d 762 (D.C. Cir. 1987) ......................................................................25

*Thornhill v. Alabama*,
 310 U.S. 88 (1940) ........................................................................................12

*Turkish Coal. of Am., Inc. v. Bruininks*,
 678 F.3d 617 (8th Cir. 2012) ........................................................................16

*U.S. ex rel. Raynor v. Nat'l Rural Utils. Coop.*,
 690 F.3d 951 (8th Cir. 2012) ........................................................................10

*Underwager v. Channel 9 Australia*,
 69 F.3d 361 (9th Cir. 1995) ..........................................................................22

*Village of Schaumburg v. Citizens for a Better Environment*,
 444 U.S. 620 (1980) ......................................................................................12

*Ward v. Bullis*,
 748 N.W.2d 397 (N.D. 2008) ........................................................................34

*Watkins v. Washington Post*,
 2018 WL 805394 (D. Md. Feb. 9, 2018) ......................................................26

*Watts v. United States*,
 394 U.S. 705 (1969) ......................................................................................20

*Webb v. Fury*,
   282 S.E.2d 28 (W.Va. 1981) ...................................................................................1

*White v. Fraternal Order of Police*,
   909 F.2d 512 (D.C. Cir. 1990) ..........................................................................28, 29

*Wilcox v. Superior Ct.*,
   33 Cal. Rptr. 2d 446 (Cal. Ct. App. 1994) .............................................................1

*Wilkow v. Forbes, Inc.*,
   2000 WL 631344 (N.D. Ill. May 15, 2000), *aff'd*, 241 F.3d 552 (7th Cir.
   2001) ....................................................................................................................11, 28

*Zidon v. Pickrell*,
   344 F. Supp. 2d 624 (D.N.D. 2004) ........................................................................35

*Zutz v. Kamrowski*,
   787 N.W.2d 286 (N.D. 2010) ...................................................................................11

## Statutes

28 U.S.C. § 1331 ...........................................................................................................8

28 U.S.C. § 1367 ...........................................................................................................8

28 U.S.C. § 1404(a) ...............................................................................................35, 37

Cal. Civ. Proc. Code § 425.16 ....................................................................................12

N.D.C.C. § 12.1-22-03 .................................................................................................32

N.D.C.C. § 14-02-03 .....................................................................................................15

N.D.C.C. § 14-02-05 .....................................................................................................28

## Rules

Federal Rules of Civil Procedure Rule 11 ....................................................................4

Federal Rules of Civil Procedure Rule 11(b) ...............................................................5

Federal Rules of Civil Procedure Rule 12(b)(2) .................................................1, 9, 35

Federal Rules of Civil Procedure Rule 12(b)(6) .........................................1, 10, 16, 37

## Constitutional Provisions

United States Constitution, First Amendment ..................................................... *passim*

**Other Authorities**

https://theintercept.com/2018/01/09/dakota-access-pipeline-leak-energy-transfer-
    partners/.................................................................................................................................18

Restatement (Second) of Conflicts of Law § 146 (1971) .............................................................11

*Studying Strategic Lawsuits Against Public Participation: Mixing Quantitative*
    *and Qualitative Approaches*, 22 Law & Soc'y Rev. 385 (1988)...............................................1

Defendants Greenpeace International ("GPI"), Greenpeace, Inc. ("GP Inc.") and Charles Brown (collectively "Greenpeace" or "Greenpeace Defendants"), hereby move under Rule 12(b)(2) and 12(b)(6) to dismiss with prejudice the Complaint of Energy Transfer LP and Energy Transfer Operating, L.P. (collectively "Energy Transfer").

## I.     INTRODUCTION

This Court has properly rejected, on more than one occasion, Plaintiff's efforts to ascribe civil liability to Greenpeace for actions taken by third-party protestors seeking to prevent the construction of the Dakota Access Pipeline.  After failing, *twice*, to pass the pleading hurdle on its federal RICO claims, Plaintiff has once again launched a convoluted suit seeking to tie Greenpeace's public advocacy to alleged criminal activities, simply because Greenpeace's speech—among a chorus of parallel advocates—criticized Plaintiff's efforts to site the pipeline on lands that pose risks to water supply and critical Indigenous cultural landmarks.  Plaintiff's relentless vendetta risks chilling the advocacy of Greenpeace and other environmental groups, and if adopted more broadly by big industry as a strategy, has more ominous implications for advocates across the political spectrum who face large corporations with deep pockets.  The barrenness of Plaintiff's latest, duplicative gambit only serves to emphasize that imposing extraordinary litigation costs on defendants, stigmatizing them with outlandish and baseless charges, and inhibiting public criticism, is the very point of Plaintiff's ongoing pursuit of a SLAPP lawsuit.[1]

---

[1] The term "SLAPP" was coined by Professors George W. Pring and Penelope Canan of the University of Denver. *See Studying Strategic Lawsuits Against Public Participation: Mixing Quantitative and Qualitative Approaches*, 22 Law & Soc'y Rev. 385 (1988).  "The paradigm SLAPP is a suit filed by a large land developer against environmental activists … intended to chill the defendants' continued political or legal opposition to the developers' plans," but SLAPPs "are by no means limited to environmental issues." *Wilcox v. Superior Ct.*, 33 Cal. Rptr. 2d 446, 449 (Cal. Ct. App. 1994); *see also Protect of Mountain Env't, Inc. v. District Ct.*, 677 P.2d 1361, 1364 (Colo. 1984) (*en banc*) (civil conspiracy claims by developer against environmental group); *Webb v. Fury*, 282  S.E.2d 28 (W.Va. 1981) (libel claim by coal company against environmental groups).

Plaintiff's first federal complaint, in August 2017, was so sprawling that this Court observed that the pleading, which "involve[d] important matters of public concern," only "outline[d] broad claims by copying statutory elements," with the "factual basis for the claims" apparently "intentionally obscured." *Energy Transfer Equity, LP, et al. v. Greenpeace International, et al.*, Case No. 1:17-cv-00173-BRW-CRH ("Original Federal Claim"), Order, ECF No. 88, Order at 3, 5. Forced to "sift[] through the accusations," this Court found that the only activity by Greenpeace purportedly underpinning Plaintiff's RICO claims was publishing public appeals to support public protests, causing the Court to ask incredulously: "Was this the 'direct and indirect' funding of an alleged international criminal enterprise?" *Id.* at 4. Moreover, the Court observed that the "airing of years-long, unrelated grievances" against Greenpeace left a vacuum in Plaintiff's pleading—"[t]he details concerning the 'donation drives,' Greenpeace's precise role in them, to whom Greenpeace gave funds, how housing and feeding individuals in cities across the country furthered violent protests in North Dakota, are all left unanswered." *Id.* at 4-5. Accordingly, the Court ordered Plaintiff to amend its complaint, noting that the "vague" pleading "makes it impossible for Greenpeace to sift through the Complaint in search of the precise factual basis for the asserted claims," especially as "[t]his Circuit consistently requires pro se parties to plead with more clarity, and less irrelevant hyperbole." *Id.* at 5.

A second bite of the apple proved similarly unavailing for Plaintiff. In dismissing Plaintiff's amended federal RICO claims against Greenpeace with prejudice, this Court explained that, after "[s]tripping away the hyperbole in the Amended Complaint," the allegations failed as a matter of law. Original Federal Claim, ECF No. 135. Accepting Plaintiff's allegations (many of which are duplicated in the present suit) as true, even if Greenpeace agreed to donate some funds raised to Cody Hall and Krystal Two Bulls (who are also named as defendants in this case), "this

does not make the three of them an ongoing organization," or an "enterprise," and any solicitations for donations to support public protests were "distinct acts performed by Greenpeace for Greenpeace's benefit," not to support any individual protestor or alleged criminal act.  *Id*. at 7.  Similarly, the Court already noted that "there are no allegations that [Hall] operated in concert with Greenpeace or under its direct control."  *Id*. at 8.  This Court likewise rejected Plaintiff's allegations that Greenpeace trained protestors how to unlawfully stop pipeline construction (allegations nevertheless reappearing in the instant Complaint), explaining that "[t]he protestors are not named defendants nor alleged to be part of the Enterprise," and moreover "there are no allegations that Greenpeace directed the 'thousands of protestors' to perform specific illegal acts or had any control over the protestors."  *Id*. at 8.  As for allegations that Greenpeace posted an article by Krystal Two Bulls, who was soliciting people to join the protest or donate to her cause, this Court explained that "[p]osting articles written by people with similar beliefs does not create a RICO enterprise."  *Id*.   And the Court rejected the wire fraud claim, noting "the fact that most (if not all) of the alleged false and sensational claims are either subject to debate matters of opinion of inconsequential."  *Id*. at 11.  Although here forecasting why the defamation claims were likely to fail, the Court declined to exercise jurisdiction over Plaintiff's remaining state-law claims, which included defamation, tortious interference, and criminal trespass.  The Court did not separately address jurisdictional or venue issues.

In this instant action, Plaintiff has repackaged its RICO claims as counts for trespass, conversion (and aiding and abetting those alleged acts), tortious interference, and civil conspiracy—but the same pleading failures remain.  Indeed, Plaintiff has utterly failed to follow the Court's direction and instead, unwilling to concede that its claims are meritless, refiled a Complaint containing much of the same inflammatory, insubstantial language as its prior

pleadings, which fails to remedy the fundamental problems that led to this Court's prior orders. Throughout its pleading, Plaintiff once again uses the language of its discredited RICO claims— such as "scheme" and "conspiratorial"—to improperly try to aggregate disparate parties together and treat them as a single actor for all purposes. *See, e.g.*, Compl. ¶¶ 2, 93, 130. Plaintiff continues to allege that Greenpeace engaged in fundraising and supply drives for protestors, which this Court previously found insufficient for an alleged RICO enterprise—and which now similarly fail to establish "aiding and abetting" trespass, conversion, or civil conspiracy. And, despite attempting to add Red Warrior Society as a party (even though it is a non-entity that cannot be sued) as well individual defendants, Plaintiff continues to fail to plausibly allege that Greenpeace and these defendants devised a plan to intentionally engage in criminal conduct. Plaintiff has thus done nothing to answer this Court's concern that its pleadings do not specifically address or allege "[t]he details concerning the 'donation drives,' Greenpeace's precise role in them, to whom Greenpeace gave funds, [or] how housing and feeding individuals in cities across the country furthered violent protests in North Dakota." Original Federal Claim, ECF No. 88, Order at 4.

Indeed, rather than correct the absence of detail regarding Greenpeace's alleged role in the alleged tortious conduct—because it cannot—Plaintiff seeks to expand the scope of its already wide-ranging claims by adding allegations regarding Greenpeace's alleged protest activities in other states. Plaintiff's decision to join Charles Brown—a Greenpeace employee hired long after the protests concluded—as a defendant is not only frivolous and in bad faith, but possibly sanctionable as this Court already held that Brown had no alleged role in alleged RICO activities related to the protests at issue, Original Federal Claim, ECF No. 135, Order at 10, and observed separately that Plaintiff's baseless pleadings may warrant sanctions pursuant to Rule 11, Original Federal Claim, ECF No. 94, Order at n.4 ("It is clear from Plaintiff's voluminous filing of

historical, irrelevant web postings that Plaintiffs did not, at the time of filing, have evidentiary support for the specific allegations against [EarthFirst!]. Plaintiffs are reminded of their obligations under Rule 11(b) of the Federal Rules of Civil Procedure."). Failing still to identify any Greenpeace associate who engaged in any criminal or tortious conduct in North Dakota, Plaintiff continues to stretch the bounds of plausibility to their breaking point by again joining Brown as a defendant for his alleged recent advocacy on behalf of Greenpeace in Louisiana and Pennsylvania. These allegations, like so many in Plaintiff's pleading, are vague and fail to make any claim for defamation, or otherwise.

The cornerstone of Plaintiff's allegations—obscured by paragraph after paragraph of *ad hominem* and hyperbolic claims alongside provocative photographs—is an attack on Greenpeace's political speech and advocacy, which Plaintiff claims must have convinced unnamed individuals to not only join public protests, but to engage in criminal activities. However, rather than replead its former, failed contentions that Greenpeace's publications defrauded donors and others, Plaintiff's libel claims now make clear that its only goal through these series of suits is to silence a vocal, public critic. Notably, in the prior federal case, this Court dismissed many of the same or similar challenged statements as to another defendant, BankTrack, observing that Plaintiff failed (as it does again here) "to state how writing alleged defamatory letters proximately caused any injury, much less a direct injury, to Energy Transfer's 'business and reputation.'" Original Federal Claim, ECF No. 87, Order at 9. The statements at issue simply do not plausibly allege actual malice, and where, as here, the challenged statements were (i) traditional advocacy protected by the First Amendment; (ii) not pled with necessary specificity; and/or (iii) protected opinion, a claim for defamation fails as a matter of law. No amount of discovery or further development of this case can cure Plaintiff's warmed over, fatally defective claims.

## II.      BACKGROUND

### A.      Parties

#### 1.      Greenpeace Entities

Greenpeace is a network of independent non-profit legal entities with nearly 3 million individual supporters globally.  The 26 national and regional Greenpeace organizations ("NROs") pursue environmental conservation on many fronts, across many campaigns, without relying on financial support from corporations or government.  *See* Declaration of Lacy H. Koonce, III ("Koonce Decl.") Ex. 1.  Indeed, Greenpeace's funding is nearly all provided by small, individual donations from 250,000 members in the U.S. and 2.8 million members worldwide.  *Id.*  GPI, whose ambit is limited to top-line global issues and strategies and whose governance structure is based on voting rights held by the NROs, is based in the Netherlands.  *Id.*  GPI is involved in setting the current overarching global campaign goals, which include climate and energy, oceans, forests, sustainable agriculture and toxics, but each NRO develops its own national campaign strategy for advancing those goals.  *Id.*  GP Inc. is the independent, non-profit entity that oversees all campaign activities in the United States.  *See id.*; Declaration of Thomas W. Wetterer.

For four decades, Greenpeace has been campaigning for a green and peaceful future for the Earth by investigating, exposing, and confronting environmental abuse, championing environmentally responsible solutions, and advocating for the rights and well-being of all people, including Indigenous groups.  Among many other things such as protecting forests and oceans, Greenpeace has long publicly objected to, and protested against, the construction of oil and gas pipelines because they perpetuate reliance on and expansion of the use of fossil fuels, and represent a potential source of toxic spills.  Greenpeace's specific advocacy against the Dakota Access Pipeline thus fits within its mission.

### 2.     Charles Brown

Charles Brown, mentioned only two times in the Complaint, Compl. ¶¶ 19, 96, was hired by GP Inc. in spring 2018, well over a year after the Dakota Access Pipeline protests.  *See* Declaration of Charles Brown.  In the Original Federal Claim, Plaintiff submitted to the Court the relevant job posting, which sought to fill a one-year contract position in "the Grassroots Department" to "work on Greenpeace's priority project of 2018 – stopping pipelines and holding ETP accountable for their bad practices."  *See* Original Federal Claim, ECF No. 90, Decl. Ex. 18. According to the ad, the applicant, if hired, would "make frequent and extended site visits to key communities to engage with partners, run trainings, work with leaders, hold events, and engage in other key on the ground organizing."  The candidate, if hired, would "[r]epresent Greenpeace on the national StopETP coalition call and liaise between coalition and Greenpeace team on priorities and output."  Plaintiff does not allege—nor can it—that Charles Brown had any role in or participated in protests of the Dakota Access Pipeline project.

### 3.     Plaintiff

None of the direct owners of the Dakota Access Pipeline are plaintiffs here.  Rather, this action was brought by Energy Transfer LP (formerly known as Energy Transfer Equity, L.P.) and Energy Transfer Operating, L.P. (formerly known as Energy Transfer Partners, L.P.), both Delaware partnerships headquartered in Texas, which together allegedly indirectly own 51% of the pipeline.  Compl. ¶¶ 11-12; *see also* Koonce Decl. Ex. 2.

### 4.     Other Parties and Non-Parties

Defendant Greenpeace Fund, Inc. is a non-profit corporation organized under the laws of California and headquartered in Washington, D.C.  Compl. ¶ 17.  Defendant Cody Hall is a resident of South Dakota.  *Id*. ¶ 20.  Defendant Krystal Two Bulls is a resident of Montana.  *Id*. ¶ 21.

Defendant Red Warrior Society, a non-entity, is not alleged to have any citizenship, formal structure, state of incorporation, or principal place of business. *See id*. ¶¶ 22-23.

### B.    The Original Federal Claim

The legal disputes over the Dakota Access Pipeline are well-documented in other cases, including *Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*, 255 F. Supp. 3d 101 (D.D.C. 2017), and *Dundon v. Kirchmeier*, 2017 WL 5894552, at *1 (D.N.D. Feb. 7, 2017), *aff'd*, 701 F. App'x 538 (8th Cir. 2017). Separate from those proceedings, on August 22, 2017, the Plaintiff here filed a federal complaint alleging civil RICO violations and state law claims against Greenpeace International, Greenpeace, Inc., Greenpeace Fund, Inc., BankTrack, EarthFirst!, and John and Jane Does 1-20. Original Federal Claim, ECF No. 1.[2]  On July 25, 2018, this Court dismissed BankTrack for lack of jurisdiction and failure to state a claim. Original Federal Claim, ECF No. 87. The Court also denied Greenpeace's motion to dismiss the complaint without prejudice and ordered Plaintiff to file an amended complaint, explaining that the "187-page complaint is impossible to summarize," and otherwise found Plaintiff "failed to state plausible RICO claims against Greenpeace," and "failed to comply with basic rules of pleading." Original Federal Claim, ECF No. 88.[3]

Plaintiff filed an amended complaint on August 6, 2018, adding several defendants including Greenpeace, Inc.'s employee Charles Brown, and alleged protestors Cody Hall, Krystal Two Bulls, Jessica Reznicek, and Ruby Montoya. Original Federal Claim, ECF No. 95, ¶¶ 31-34,

---

[2] Plaintiff asserted subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over "the pendent state law claims" pursuant to 28 U.S.C. § 1367. Original Federal Claim, ECF No. 1, Compl. ¶ 27.

[3] Thereafter, on August 22, 2018, after issuing a show cause order, the Court dismissed EarthFirst! for lack of service and because Plaintiff failed to show EarthFirst! was an entity subject to suit. Original Federal Claim, ECF Nos. 86, 89, and 99.

62.[4]  On February 14, 2019, the Court issued an order granting Greenpeace's motion to dismiss the amended complaint with prejudice as to each of Plaintiff's federal RICO claims.  Original Federal Claim, ECF No. 135.  The Court declined to exercise jurisdiction over Plaintiff's state law claims, and also did not rule on Rule 12(b)(2) grounds for dismissing GPI and Brown, which were otherwise dismissed from case, with Greenpeace, Inc. and Greenpeace Fund on 12(b)(6) grounds.

### C.    Procedural History

Plaintiff filed the instant action on or about February 21, 2019 as Case No. 30-2019-GV-00180 in the State of North Dakota, District Court of South Central Judicial District, in and for the County of Morton.[5]   The action was timely removed by the Greenpeace Defendants and Greenpeace Fund on March 18, 2019, on grounds that there is complete diversity of citizenship as to all parties and the amount in controversy exceeds the sum or value of $75,000.  ECF No. 1, Jt. Notice Removal ¶¶ 4-5.

As was the case in its Original Federal Claim, Plaintiff's suit once again pertains to criticism and protest activities concerning the Dakota Access Pipeline construction and attempts to assert claims for trespass to land and chattel (against the Greenpeace Defendants, Red Warrior Society,[6] Hall and Two Bulls); aiding and abetting trespass to land and chattel (against the Greenpeace Defendants, Hall, and Two Bulls); conversion (against the Greenpeace Defendants,

---

[4] Though John and Jane Doe Defendants were named in the original complaint, the Court allowed Plaintiff additional time to identify and name Does "holding themselves out as associates of EarthFirst!," but Plaintiff failed to do so.  *See* Original Federal Claim, ECF No. 135, Order at 3.

[5] In quick succession, every judge of the court recused themselves from hearing the case. *See* ECF Nos. 1-6, 1-7, 1-8, 1-9, 1-12, 1-13, 1-14.

[6] As more fully set forth in the Greenpeace Defendants' Joint Notice of Removal, "Red Warrior Society," like EarthFirst! in the Original Federal Claim, is not an entity with capacity to be sued and its joinder in this case should be ignored under the doctrine of fraudulent joinder.  *See* ECF No. 1, Jt. Notice Removal ¶¶ 7-25 & n.1.

Red Warrior Society, Hall and Two Bulls); aiding and abetting conversion (against the Greenpeace Defendants, Hall, and Two Bulls); defamation (against the Greenpeace Defendants); tortious interference (against the Greenpeace Defendants); and civil conspiracy (against all Defendants).

### III.    ARGUMENT

**A.    The Complaint Should Be Dismissed For Failure to State a Claim**

**1.    Applicable Pleading Standards and Choice of Law**

As this Court noted in requiring Plaintiff to amend its original complaint, "[t]he most basic requirement of pleading is 'simple, concise, and direct' allegations."  Original Federal Claim, ECF No. 88, Order at 2 (citing Fed. R. Civ. P. 8(d)(1)).  With 131 paragraphs, and meandering, inflated claims, Plaintiff's new complaint still fails to meet this "most basic requirement."  While on a Rule 12(b)(6) motion courts assume as true all alleged facts and construe reasonable inferences favorably to the plaintiff, a complaint "must contain facts with enough specificity 'to raise a right to relief above the speculative level.'"  *U.S. ex rel. Raynor v. Nat'l Rural Utils. Coop.*, 690 F.3d 951, 955 (8th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570).  Neither "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" nor "'naked assertion[s]' devoid of 'further factual enhancement'" meet this standard.  *Magee v. Trustees of Hamline Univ., Minn.*, 747 F.3d 532, 535 (8th Cir. 2014) (citations omitted).

On Plaintiff's defamation and interference claims, California or District of Columbia substantive law would apply because the locus of the Greenpeace Defendants' speech activities at issue is their offices, not North Dakota.  *Avery v. Ward*, 2017 WL 5451743, at *7 (D.N.D. Nov. 15, 2017); *Polensky v. Continental Cas. Co.*, 397 F. Supp. 2d 1164, 1168-69 (D.N.D. 2005) (aim

to identify forum that "because of its relationship or contact with the occurrence or the parties has the greatest concern with the specific issue raised in the litigation"); *Sura v. National Oilwell Varco, L.P.*, 2016 WL 4217766, at *4 (D.N.D. Apr. 6, 2016) (noting importance of *lex loci delecti* doctrine for tort claims); *Zutz v. Kamrowski*, 787 N.W.2d 286, 291 (N.D. 2010) (agreeing Minnesota law applied to claim by Minnesota plaintiff against North Dakota defendant who made defamatory statements in report published to Minnesota municipality); *see also* Wetterer Decl. ¶¶ 3-14.   In addition, either the law of the District of Columbia or California applies to Greenpeace's libel defenses because those jurisdictions have the most significant relationship to the Greenpeace Defendants' publication decisions.  *See* Restatement (Second) of Conflicts of Law § 146 (1971) ("the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship"); *id*. § 145 cmt. d ("courts have long recognized that they are not bound to decide all issues under the local law of a single state.").  On point decisions from courts in other jurisdictions following the Restatement test make clear that District of Columbia or California law should apply to the Greenpeace Defendants' fair report privilege defense.  *See Wilkow v. Forbes, Inc.*,  2000 WL 631344 (N.D. Ill. May 15, 2000), *aff'd*, 241 F.3d 552 (7th Cir. 2001) (holding Illinois law applied to "the defamation at issue," but the law of the defendants' domicile—New York—applied to the fair report privilege defense; "[t]he fair reporting privilege is meant to protect speakers, not provide a remedy to plaintiffs"); *Global Relief Found. v. N.Y. Times Co*., 2002 WL 31045394, at *11 (N.D. Ill. Sept. 11, 2002) (Illinois law applied to the underlying defamation claim while "the law of California will apply to defenses to defamation"); *Gubarev v. Buzzfeed*, Case 0:17-cv-60426-UU, ECF No. 171 (S.D. Fla. June 5, 2018) (applying New York law to defendants' affirmative defenses—including their fair report privilege defense—because "the affirmative

defenses asserted by Defendants," who wrote, published, and edited the publication in suit in New York, "exist to protect speakers, not to provide Plaintiffs a remedy.").[7]

### 2. Plaintiff Fails to Plead a Plausible Claim for Defamation

#### a. Traditional Advocacy is Protected by the First Amendment

Greenpeace's political advocacy criticizing Plaintiff's practices is within the core of First Amendment protection. Public reports, petitions, articles, and protests are types of speech and expression clearly entitled to protection—regardless of how "hurtful" they are to the recipient. *Snyder v. Phelps*, 562 U.S. 443, 446 (2011). Accordingly, although Plaintiff complains that Greenpeace's views were representative of "anti-fossil fuel and environmental activist communities," Compl. ¶ 82, such viewpoints are entirely protected and there is nothing inherently libelous about holding these alleged beliefs—even if they run counter to Plaintiff's business objectives.

Such speech encompasses calls for boycotts and similar corporate campaigns, *Thornhill v. Alabama*, 310 U.S. 88 (1940), and charitable appeals, *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 632 (1980). It is long-established that an advocacy group like Greenpeace cannot be held liable for non-violent expressive speech activities. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982). Particularly troubling, Plaintiff's claims not only seek to extinguish Greenpeace's freedom of speech, they also attack the right of association. *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958). Plaintiff's complaint regarding

---

[7] To the extent California law applies, Greenpeace avails itself of California's robust statutory protection against SLAPP suits, Cal. Civ. Proc. Code § 425.16, and moves to strike and dismiss Plaintiff's Complaint for the reasons set forth herein. In *Resolute Forest Prod., Inc. v. Greenpeace Int'l*, No. 17-CV-02824-JST, 2019 WL 281370, at *17-18 (N.D. Cal. Jan. 22, 2019) ("*Resolute II*"), another case testing the limits of federal RICO and defamation actions to attack political speech and advocacy campaigns, the court granted Greenpeace's motion to strike and awarded fees on state law claims under the California anti-SLAPP Act.

the Dakota Access Pipeline protests appears to be that they were the result of "coordination" among various advocacy organizations, *ad hoc* protest groups, and a couple of named individuals—but even if this were true, such organized political associative speech is fully protected under the First Amendment.  "There are, of course, some activities, legal if engaged in by one, yet illegal if performed in concert with others, but political expression is not one of them." *Citizens Against Rent Control/Coal. for Fair Hous. v. Berkeley*, 454 U.S. 290, 296 (1981).  Indeed, the First Amendment "extends to more than abstract discussion, unrelated to action."  *Claiborne Hardware Co.*, 458 U.S. at 910.  It "'. . . is a charter for government, not for an institution of learning.  'Free trade in ideas' means free trade in the opportunity to persuade to action, not merely to describe facts.'"  *Id.* (quoting *Thomas v. Collins*, 323 U.S. 516, 537 (1945)); *see also Claiborne Hardware Co.*, 458 U.S. at 926 (holding that "business losses" caused by organizing a boycott, "emotional and persuasive appeals for unity in the joint effort," and "'threats' of vilification or social ostracism" are "constitutionally protected and beyond the reach of a damages award").  The effectiveness of the groundswell of concurring expression seems to be Plaintiff's real gripe because the common criticism subjected the Dakota Access Pipeline project, and its environmental and cultural impact, to substantial public scrutiny.  Greenpeace represents millions of supporters to advance their concerns, and Plaintiff cannot use libel law to trample their associational and speech rights.

Plaintiff's pleadings demonstrate that each of its claims is based on Greenpeace's expression about issues of public interest—and its efforts to amplify its political message by associating with like-minded environmental organizations and individual protestors and charitable donors.  Each of the topics Plaintiff identifies as false and defamatory self-evidently pertains to issues in the public interest, including: criticism that (1) the Dakota Access Pipeline traverses

Dakota tribal lands; (2) the Dakota Access pipeline poses a risk to water supply; (3) the pipeline project poses a climate risk; (4) Plaintiff retained or supported security teams that combat protestors with excessive force; (5) the pipeline was routed and approved with inadequate environmental review or consultation with the Standing Rock Sioux Tribe; and (6) the pipeline project desecrated cultural resources.  Compl. ¶¶ 35-49.  These broad categories indisputably relate to issues of profound public importance, and a review of all 79 Greenpeace statements specifically challenged as defamatory in Appendix A demonstrates that each one is of this type.

### b.        Failure to Plead Statements With Specificity

Every Circuit to have considered the issue has specifically held that the *Twombly/Iqbal* pleading standard must be rigorously applied in defamation actions, including to the pleading of "actual malice," the fault standard that must be met by a public figure such as Plaintiff.[8]  As one Circuit aptly explained, "application of the plausibility pleading standard makes particular sense when examining public figure defamation suits" because "there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation."  *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016).  This is in keeping with the long-held view that "summary proceedings are essential in the First Amendment area because if a suit entails 'long and expensive litigation,' then the protective purpose of the First Amendment is thwarted even if the defendant ultimately prevails."  *Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.D.C. 2014) (quoting *Washington Post Co. v. Keogh*, 365

---

[8] *See Biro v. Conde Nast*, 807 F.3d 541, 544-45 (2d Cir. 2015); *McDonald v. Wise*, 769 F.3d 1202, 1220 (10th Cir. 2014); *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013); *Mayfield v. NASCAR, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 58 (1st Cir. 2012).  *See also Ragland v. Blue Cross Blue Shield of N.D.*, 2012 WL 5511006, at *2 (D.N.D. Nov. 14, 2012) (slander claim dismissed where plaintiff did not allege defendant "published any information to a third-party").

F.2d 965, 968 (D.C. Cir. 1966)).  This admonition is particularly apt with respect to Plaintiff's third attempt to state a claim against Greenpeace.

To prevail in a defamation suit, therefore, Plaintiff must adequately allege and then prove that the statements complained of are (1) defamatory; (2) capable of being proven true or false; (3) of and concerning the Plaintiff; (4) false; and (5) in the case of public figures like Plaintiff, made with actual malice.[9]  *Stepnes v. Ritschel*, 663 F.3d 952, 963 (8th Cir. 2011); *Campbell v. Citizens for an Honest Gov't, Inc.*, 255 F.3d 560, 569 (8th Cir. 2001); *Humann v. KEM Elec. Coop.*, 450 F. Supp. 2d 1006, 1015 (D.N.D. 2006), *aff'd*, 497 F.3d 810 (8th Cir. 2007); N.D.C.C. § 14-02-03.  In the instant case, Plaintiff's libel claim fails as a matter of law and should be dismissed for three principal reasons.  First, ***the publications at issue are protected expressions of opinion***.  Second, ***Plaintiff does not—and cannot—plausibly allege that Greenpeace published the challenged statements with actual malice***.  Third, ***the publications are fair and accurate reports of judicial and other official government proceedings***.

Each of these grounds for dismissal is addressed below in turn.

### c.    Greenpeace's Challenged Statements Are Protected Opinion

All of Greenpeace's statements are not only true and thus lack the requisite element of substantial falsity, but they are also non-actionable expressions of opinion, aimed at informing and swaying the public regarding the environmental impact of the Dakota Access Pipeline and persuading banks to discontinue serving Energy Transfer.  This constitutes quintessential advocacy aimed at persuading members of the public to voice their own, parallel concerns regarding the potential environmental and cultural consequences of the pipeline project.  Statements of opinion

---

[9] Quotations that are not clearly "of and concerning" Plaintiff or even substantially false, are thus not defamatory.  Suppl. App. Tab 2 (quoting statements reported in *The Guardian* article). *See infra* n.13.

like these are core protected speech and not actionable statement of fact. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974). Further, in assessing whether commentary on a matter of public concern is protected, context is crucial. *Secrist v. Harkin*, 874 F.2d 1244, 1249 (8th Cir. 1989). Here, Greenpeace's publications are known for advancing the organization's advocacy mission and opinions. Moreover, the challenged publications were part of a heated public debate encompassing large-scale protests and global news coverage where criticism and emphatic speech signal to readers that they are encountering statements of an advocate. *New York Times Co. v. Sullivan*, 376 U.S. 254, 257 (1964). Whether a statement is one of opinion is a question of law, *Others First, Inc. v. Better Bus. Bureau of Greater St. Louis, Inc.*, 829 F.3d 576, 581 (8th Cir. 2016), and courts routinely dismiss defamation suits on this basis alone.[10] Where, as here, the publications in suit are statements of opinion, no defamation can lie. As this Court said "most (if not all) of the alleged 'false and sensational claims' are either subject to debate, matters of opinion or inconsequential." Original Federal Claims, ECF. 135, Order at 11.

For example, Plaintiff claims that the conclusion in the multi-party "Open Letter to President Obama" that the Dakota Access Pipeline "would travel through the Standing Rock Sioux Tribe's ancestral lands and pass within a mile of its current reservation," is false. Compl. App. A; Suppl. App. Tab 1.[11] On its face, however, the statement truthfully describes the path of the

---

[10] *Turkish Coal. of Am., Inc. v. Bruininks*, 678 F.3d 617, 624-26 (8th Cir. 2012) (affirming Rule 12(b)(6) dismissal of claims challenging statements of opinion); *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1337-39 (D.C. Cir. 2015) (Kavanaugh, J.) (same); *Farah*, 736 F.3d at 531 (same); *Dodds v. Am. Broad. Co.*, 145 F.3d 1053, 1065 (9th Cir. 1998) (same); *Levin v. McPhee*, 119 F.3d 189, 194-96 (2d Cir. 1997) (same); *Hill v. Cosby*, 665 F. App'x 169, 173 (3d Cir. 2016).

[11] The Greenpeace Defendants provide full copies of each of the publications in suit as a supplemental appendix so that the Court can properly assess the merits of Plaintiff's claims. *See Moses.com Sec., Inc. v. Comprehensive Software Sys.*, 406 F.3d 1052, 1063 n.3 (8th Cir. 2005) (in

pipeline.  But even if there is any debate as to the veracity of the challenged statement (based, for instance, on what "ancestral lands" means), the statement is protected as an opinion based on facts disclosed in the letter, *see Others First, Inc..*, 829 F.3d at 581-82 (disclosed facts "sufficient to support" and "provided a basis" for opinions asserted "without implying any other [undisclosed] facts"), including references to the SRST Lawsuit "to block construction of the pipeline," because the Army Corps of Engineers is violating the National Historic Preservation Act by failing to address the Tribe's concern about the pipeline's impact to sacred sites and culturally important landscapes…."  Obviously sacred sites and culturally important landscapes are within the ancestral lands of the Tribe in the opinion of its members.  Greenpeace's challenged conclusion based on these disclosed facts is a fairly protected expression of opinion.

As for a letter from the Greenpeace Defendants and hundreds of other advocacy groups sent to Dakota Access Pipeline-funding institutions, encouraging divestment, Plaintiff takes issue with the statement that its personnel "deliberately desecrated documented burial grounds and other culturally important sites."  Suppl. App. Tab 22 at 2.  But the location of culturally important sites is a matter of significant ongoing controversy even among experts.  And whether a government agency issued an opinion on the matter does not render the signatories' contrary opinion, based on facts disclosed in the letter, actionable.  The letter directly relies on the "long standing opposition to the project by the Standing Rock Sioux Tribe," and explains that "desecration of burial grounds" resulted as a consequence of those sites having "not been identified early on" in the pipeline planning process—a timeline probed in litigation between the SRST and the USACE.  *See Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*, 255 F. Supp. 3d 101, 111-12 (D.D.C

---

ruling on a motion to dismiss, the court may consider documents incorporated by reference into the pleadings).

2017).  The statement challenged by Plaintiff is opinion, placed in an advocacy communication endorsed by hundreds of environmental organizations, based on disclosed facts and, as such, is protected.

Statements referencing the pipeline's "threats to water sources" merely state the non-actionable opinion that there is a threat, not a certainty, that the pollution has already occurred or will occur.  Suppl. App. Tab 10 ("[T]his … pipeline[] pose[s] immediate threats to our land, water and climate."), Tab 14 ("Dakota Access Pipeline … directly threaten[s] the sacred lands and water source of the Standing Rock Sioux Tribe….").  Indeed, these kinds of statements have been found to be protected opinion in other cases.  *E.g., Riley v. Harr*, 292 F.3d 282 (1st Cir. 2002) (statement tannery contaminated well water and caused "toxic waste dump" and owner "must have known" of property's condition opinion).  Moreover, Plaintiff does not claim the assertion is false—just the opposite.  Plaintiff argues only that "the risk of spill was extremely low," Compl. ¶ 6, and does not seriously deny that if a spill occurred, it could be catastrophic.[12]  Just as important is that the challenged statements tying the pipeline project to climate change risk are clearly expressing the opinion that the existence of oil infrastructure contributes to the climate change problem—a matter of considerable public discourse.  *See* Suppl. App. Tab 9 ("Re-routing Dakota Access Pipeline Won't Make it Less Dangerous to the Environment or Climate"), Tab 24 ("the rest of America will face the impacts of catastrophic climate change from burning fossil fuels").  This too has been held to be protected opinion.  *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1020 (N.D. Cal. 2017) ("*Resolute I*").

---

[12] Indeed, public reports have indicated that as of January 2018, the Dakota Access Pipeline had experienced five spills in its first six months of operation. https://theintercept.com/2018/01/09/dakota-access-pipeline-leak-energy-transfer-partners/.

The Complaint alleges the Greenpeace Defendants (and others) made libelous statements that Plaintiff used excessive force on pipeline protestors, but any challenged statements are protected opinion based on facts that were being reported at the time.  For example, an article titled "How You Can Help Standing Rock Activists Stop the Dakota Access Pipeline," repeats the widely reported facts that "private security forces set dogs and pepper spray upon a crowd that included young children, injuring 30 activists," and, based on those facts, concludes Plaintiff's "crew have reacted with aggression and violence."  Suppl. App. Tab 3; *see id*. Tab 13.  Similarly, Greenpeace's statements that the federal permitting process for the pipeline was "rushed" are opinion based on the reported timeline of events.[13]  Accordingly, most if not all of the complained-of statements are opinions based on referenced facts and the opinions provided the speaker's interpretation of those facts.

Further, advocacy pieces like Greenpeace's here are quintessential opinion publications. "[W]hen determining initially whether a statement is fact or opinion, it does a disservice to the First Amendment not to consider the public or political arena in which the statement is made and whether the statement implicates core values of the First Amendment."  *Janklow v. Newsweek, Inc.*, 788 F.2d 1300, 1303 (8th Cir. 1986).  Accordingly, the context of the publication is critical. *Id*. at 1302.  *See also Price v. Viking Penguin, Inc.*, 881 F.2d 1426 (8th Cir. 1989); *Secrist v. Harkin*, 874 F.2d 1244 (8th Cir. 1989); *Deupree v. Iliff*, 860 F.2d 300 (8th Cir. 1988).  Each of the

---

[13] And moreover, such statements are not "of and concerning" Plaintiff, but rather the government's permitting process and thus cannot form the basis of Plaintiff's defamation claim (especially where the government cannot sue for defamation). *Schuster v. U.S. News & World Report, Inc.*, 602 F.2d 850, 854 (8th Cir. 1979).  This presents yet another ground for dismissing several statements in suit that critique the government, rather than Plaintiff.  *See* Suppl. App. Tab 23 ("The original permitting for the pipeline was fast tracked without adequate tribal consultation and consent or environmental review."), Tab 27 ("If this administration is going to fast track environmental destruction then relentless resistance will be the response.").

publications in suit is attributed to Greenpeace, which is well-known and identified with environmental advocacy.  The publications include various obvious statements of opinion, such as "We're here to tell TD Bank that destroying indigenous land and poisoning the water of thousands of people is bad for business," Suppl. App. Tab 18.  Advocacy pieces like these are similar to a newspaper's op-ed page, understood by reasonable readers to be inherently opinion-based.  *Ollman v. Evans*, 750 F.2d 970, 986-87 (D.C. Cir. 1984), *cert. denied*, 471 U.S. 1127 (1985); *Janklow v. Newsweek, Inc.*, 788 F.2d 1300 (8th Cir. 1986).

Fourteen of the 35 Greenpeace publications at issue are press releases,[14] which in the context of a political campaign "signal political opinion" just "as a newspaper editorial or political cartoon" would.  *Secrist*, 874 F.2d at 1249.  Indeed, "debate on public issues should be uninhibited, robust, and wide-open," *Sullivan*, 376 U.S. at 270, and even in situations where stronger wording has been used, courts go so far as to say that "language in the political arena" can even be "vituperative" or "inexact," *Watts v. United States*, 394 U.S. 705, 708 (1969).  Thus, accusations made "in the context of political, social or philosophical debate" are understood to be opinion.  *Ollman*, 750 F.2d at 987 (*en banc*); *see also id*. at 1013 (MacKinnon, J., concurring); *Koch v. Goldway*, 817 F.2d 507, 509 (9th Cir. 1987).   Here too, Greenpeace's political advocacy is understood, in context, to be statements of opinion.  Indeed, the press releases are placed directly in the context of responding to public statements of government officials, such as President Obama, Suppl. App. Tab 8, the U.S. Army Corps of Engineers, *id*. Tabs 12 & 30, then-President-Elect Trump, *id*. Tab 24, and a court ruling allowing Dakota Access to resume construction, *id*. Tab 31; or to comment on North Dakota-based pipeline protests, *id*. Tabs 10 & 32, an investor's divestment from companies backing the Dakota Access Pipeline, *id*. Tab 20, a bank's public

---

[14] Suppl. App. Tabs 8, 10, 12, 16, 18, 20, 23, 24, 26, 30, 31, 32, 33, 35.

statements of concern over the pipeline, *id*. Tab 26, and a statement in support of a Washington, D.C. protest march, *id*. Tab 35.  Press releases such as these are readily understood as statements of opinion in the context of public debate.

The seven Tweets in suit are part of the vibrant political debate that takes place over social media and are recognized in appropriate circumstances as opinion.[15]  The Complaint places the Tweets squarely in the context of an advocacy campaign regarding the Dakota Access Pipeline and Plaintiff's pipeline operations and practice.  A reader would naturally understand accusations and slogans made on Twitter, in a political context, reflect subjective disagreements because it is also a forum for the pithy exchange of opinions.  "Not only commentators, but courts as well have recognized that online blogs and message boards are places where readers expect to see strongly worded opinions rather than objective facts." *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 696-97 (2012) (collecting cases).  This principle applies even more strongly to Twitter, where users are limited to 280 characters to post off-the-cuff thoughts in a continually updating stream.  *See, e.g, Jacobus v. Trump*, 55 Misc. 3d 470, 484, 51 N.Y.S.3d 330, 343 (N.Y. Sup. Ct. ), *aff'd*, 2017 N.Y. Slip Op. (1st Dep't Dec. 21, 2017); *GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal. App. 4th 141, 156 (2013) (tweet that litigation claims were "frivolous" protected opinion); *Chaker v. Mateo*, 209 Cal. App. 4th 1138, 1149-50 (2012) (internet posting opinion because the "insults are generalized in that they lack any specificity" as to detailed facts).  Accordingly Greenpeace tweets with slogans such as "We have rights, and one of those rights is the right to clean water," Suppl. App. Tab 2, "Re-routing Dakota Access pipeline won't make it less dangerous to the environment or our climate!," *id*. Tab 9, and "Militarized response to peaceful protest and indigenous rights is

---

[15] Suppl. App. Tabs 2, 9, 13, 17, 19, 21, 27.

indefensible," *id.* Tab 17, are protected speech expressed in a medium universally recognized for pointed commentary.[16]

Finally, the complained-of statements that, for example, Plaintiff was "willing to destroy Standing Rock's … water supply," Suppl. App. Tab 23, along with other strong language such as the Dakota Access Pipeline is "a project that tramples Indigenous rights and pushes us closer to climate disaster," *id.* Tab 6, constitute the type of "colorful" language given wide latitude under the First Amendment. *Underwager v. Channel 9 Australia*, 69 F.3d 361, 367 (9th Cir. 1995). The Supreme Court has confirmed time and again that the First Amendment protects vigorous speech on matters of public debate, and Eighth Circuit courts have added to this body of law. *See, e.g., Brodkorb v. Minn.*, 2013 WL 588231, at *14 (D. Minn. Feb. 13, 2013). The *Resolute* court criticized the plaintiff's "overly literal approach to obviously overemphatic speech," affirming that evocative language is "protected speech." *Resolute I*, 302 F. Supp. 3d at 1020. Because environmental issues generally, and climate change debate in particular, are notoriously contentious topics, recipients of these publications would expect emphatic language from Greenpeace. Plaintiff complains that referring to the Dakota Access Pipeline as "devastating to Native communities and lands," Suppl. App. Tab 8, is defamatory, but such charged statements, based on disclosed facts, indisputably signals nonactionable opinion.

---

[16] Some Tweets in suit merely describe activities of other protestors, including one quoting a pipeline protestor: "'We have rights, and one of those rights is the right to clean water.'" Suppl. App. Tab 2, and one describing a protest in Washington, D.C., *id.* Tab 21. Plaintiff fails to show how such descriptive statements are defamatory, or even how Plaintiff was harmed by these Tweets. *See supra* n. 13.

### d.    Plaintiff Cannot Plausibly Plead Statements Made With Actual Malice

Even if the complained-of statements were not protected opinion (and they are), the Complaint fails to state a claim as a matter of law because it does not allege the requisite high degree of fault on the part of Greenpeace.   As a public figure, Plaintiff does not and cannot plausibly plead actual malice.  The First Amendment makes clear that a public figure plaintiff may recover for injury to reputation only on clear and convincing proof of "actual malice," a state of mind the Supreme Court has defined as a subjective awareness of "probable falsity," and that the defendant "in fact entertained serious doubts as to the truth of his publication."   *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (internal quotations omitted).

Plaintiff did not challenge its public figure status or the application of the actual malice standard to its parallel defamation claims in the Original Federal Claim.  *See* Original Federal Claim, ECF No. 111, Opp. 33-34.  Nor could Plaintiff possibly dispute such status here.  The alleged defamatory speech in this case clearly addresses matters with which the public has legitimate concern.  The public is legitimately interested in all manner of environmental harm and the treatment of Indigenous communities.  *See, e.g., Mott v. Anheuser-Busch, Inc.*, 910 F. Supp. 868, 874 (N.D.N.Y. 1995) ("admitted violations of environmental regulations implicate issues of environmental safety and public health," and are issues of public concern), *aff'd*, 112 F.3d 504 (2d Cir. 1996); *Container Mfg. Inc. v. CIBA-GEIGY Corp.*, 870 F. Supp. 1225, 1234-35 (D.N.J. 1994) (storage of chemicals "pose potentially sever[e] health and environmental risks to society" and is an issue of public concern).  And, Plaintiff's practice as a pipeline operator has been the subject of substantial media reporting.

In *Gertz*, the Supreme Court discussed the distinction between private and public figures, noting two fundamental differences.  First, public figures usually have greater access to the media,

which gives them "a more realistic opportunity to counteract false statements than private individuals normally enjoy." 418 U.S. at 344; *see also Hutchinson v. Proxmire*, 443 U.S. 111, 136 (1979) ("[R]egular and continuing access to the media … is one of the accouterments of having become a public figure."). Second, "public figures … voluntarily exposed themselves to increased risk of injury from defamatory falsehoods concerning them." *Gertz*, 418 U.S. at 345. In short, public figures "invite attention and comment." *Hutchinson*, 443 U.S. at 134. The essentiality of demanding the highest standard of fault for public figures has been thoroughly embraced under North Dakota law. *Riemers v. Mahar*, 748 N.W.2d 714 (N.D. 2008).

Corporations subject to regulation by state or federal authorities invite public scrutiny by voluntarily entering such businesses. *See Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1393-94 (8th Cir. 1997) (holding highly regulated corporations are public figures); *Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 273 (7th Cir. 1983) (dictum) ("there seems no reason to classify a large corporation as a private person."). There is thus no question that Plaintiff is a highly visible corporation that must plead and prove "actual malice."[17] *See* Compl. ¶¶ 11-13. *See Compuware Corp. v. Moody's Inv'rs Servs.*, 499 F.3d 520, 525 (6th Cir. 2007); *Reliance Ins. Co. v. Barron's*, 442 F. Supp. 1341 (S.D.N.Y. 1977).

Plaintiff is required to plead facts showing Greenpeace acted with actual malice by clear and convincing evidence—but it cannot plausibly do so. *See Gertz*, 418 U.S. at 331-32. The "actual malice" standard imposes a heavy burden on plaintiffs. It "is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing." *St. Amant*, 390 U.S. at 731. Rather, the plaintiff has the burden of pleading and ultimately proving

---

[17] Plaintiff is also a limited purpose public figure on the public controversy concerning its pipeline management, and the alleged defamatory statements are germane to its participation in the controversy. *See Stepnes*, 663 F.3d at 964; *Resolute I*, 302 F. Supp. 3d at 1017.

that the defendant made the statements with a "high degree of awareness of their probable falsity." *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964).  In this manner, the actual malice standard is "daunting" and "significantly more onerous than the usual preponderance of the evidence standard." *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 116 (D.C. Cir.) (Kavanaugh, J.) (quoting *Tavoulareas*, 817 F.2d at 776), *cert. denied sub nom. Von Kahl v. Bureau of Nat'l Affairs, Inc.*, 138 S. Ct. 366 (2017).  As the D.C. Circuit has explained this bedrock constitutional principle, a public figure can only support a libel claim with allegations that the defendant was subjectively aware the story was "(1) fabricated; (2) so inherently improbable that only a reckless person would have put [it] in circulation; or (3) based wholly on an unverified anonymous telephone call or some other source that [plaintiff] has obvious reasons to doubt." *Lohrenz v. Donnelly*, 350 F.3d 1272, 1283 (D.C. Cir. 2003).  "For [the actual malice] standard to be met, the publisher must come close to willfully blinding itself to the falsity of its utterance.'" *Tavoulareas v. Piro*, 817 F.2d 762, 776 (D.C. Cir. 1987) (*en banc*) (citation omitted).  Plaintiff cannot clear this high hurdle, even at the pleading stage.  Moreover, in the wake of *Iqbal* and *Twombly*, a plaintiff cannot state a claim simply by making conclusory assertions of the elements of actual malice, which is all Plaintiff does here.  Federal courts in the Eighth Circuit and across the country routinely dismiss defamation cases for failure to state a claim where, as here, the plaintiff fails to plead specific facts to make actual malice plausible.[18]

---

[18] *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50 (1st Cir. 2012); *Mayfield*, 674 F.3d at 378; *Egiazaryan v. Zalmayev*, 2011 WL 6097136, at *8 (S.D.N.Y. Dec. 7, 2011); *Hanks v. Wavy Broad., LLC*, 2012 WL 405065, at *12 (E.D. Va. Feb. 8, 2012); *Pan Am. Sys., Inc. v. Hardenbergh*, 871 F. Supp. 2d 6, 17 (D. Me. 2012); *Diario El Pais, S.L. v. Nielsen Co., (US)*, 2008 WL 4833012, at *6-7 (S.D.N.Y. Nov. 6, 2008); *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 761-62 (D. Md. 2015); *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 288 (S.D.N.Y. 2013); *Parisi v. Sinclair*, 845 F. Supp. 2d 215 (D.D.C. 2012); *Deripaska v. Associated Press*, 2017 WL 4685297, at *5 (D.D.C. Oct. 17, 2017); *Fairbanks v. Roller*, 314 F. Supp. 3d 85 (D.D.C.  2018).  *See also supra* n. 8.

Because the challenged statements expressly rely on previously published articles in reputable publications and statements in official court records, scientific reports, and government reports, Plaintiff cannot plausibly meet the "daunting" standard of actual malice and instead these statements conclusively demonstrate Greenpeace's lack of actual malice as a matter of law. Reliance on previously published material from reputable publications precludes Plaintiff from pleading actual malice.  *See, e.g., Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1297 (D.C. Cir. 1988).  For example, numerous challenged publications cite and hyperlink to the sources upon which they rely, including news coverage of the Dakota Access Pipeline protests,[19] news coverage of bank divestments from companies that backed the pipeline project,[20] news reports that protestors were met with excessive force,[21] and official United Nations statements on Indigenous peoples' rights.[22]  Reliance on these reputable sources defeats actual malice, as a matter of law. *Flowers v. Carville*, 310 F.3d 1118, 1130 (9th Cir. 2002) ("One who repeats what he hears from a reputable news source, with no individualized reason external to the news report to doubt its accuracy, has not acted recklessly."); *Watkins v. Washington Post*, 2018 WL 805394, at *7 (D. Md. Feb. 9, 2018) ("courts have found that reporters are not negligent, let alone acting with malice, when relying on other reputable sources") (collecting cases); *Klayman v. City Pages*, 2015 WL 1546173, at *16-17 (M.D. Fla. Apr. 3, 2015) (not actual malice when relied on judicial opinions and public filings), *aff'd*, 2016 WL 3033141, at *5 (11th Cir. May 27, 2016) ("Evidence that an article contains information that readers can use to verify its content tends to undermine claims of actual malice."); *CACI Premier Tech. v. Rhodes*, 536 F.3d 280, 292 (4th Cir. 2008) (no actual

---

[19] Supp. App. Tab 2.

[20] *Id*. Tab 20.

[21] *Id*. Tab 22.

[22] *Id*. Tab 7.

malice where relied on official reports); *Montgomery v. Risen*, 197 F. Supp. 3d 219, 260 (D.D.C. 2016) (no actual malice when relied on prior publications), *aff'd on other grounds*, 875 F.3d 709 (D.C. Cir. 2017).

Plaintiff claims that Greenpeace made false statements with the intent of injuring its reputation and interfering with its business relationships, Compl. ¶¶ 119, 125, but a defamation defendant's "intent" is insufficient to establish actual malice. *Pauling v. Globe-Democrat Publ'g Co.*, 362 F.2d 188, 198 (8th Cir. 1966). Nor do the political motivations of the speakers establish actual malice. *Campbell*, 255 F.3d at 569. To plead actual malice, Plaintiff must allege facts sufficient to give rise to a reasonable inference that the alleged false statements were made with knowledge that they were false or with reckless disregard of whether they were false. *Id.*; *Soentgen v. Quain & Ramstad Clinic, P.C.*, 467 N.W.2d 73 (N.D. 1991). This analysis applies only to the actual person who uttered the statement (or the party with control over the publication). *Resolute I*, 302 F. Supp. 3d at 1019. The Complaint does not allege—and cannot allege—facts suggesting Greenpeace entertained any serious doubts that the 79  challenged Greenpeace statements published regarding Plaintiff's pipeline operations were true.

Although Plaintiff may have wanted Greenpeace to tell Plaintiff's side of the story, the Greenpeace Defendants had no legal obligation to include information Plaintiff would have preferred they include, so long as their statements were not false. *Janklow v. Newsweek, Inc.*, 759 F.2d 644, 647-48 (8th Cir. 1985). It is the function of advocates to hold the powerful to account, not to disseminate their marketing materials. Choice of what to include in Greenpeace's advocacy

is an editorial judgment which a defamation plaintiff cannot dictate and with which courts do not interfere. *Miami Herald Publ'g v. Tornillo*, 418 U.S. 241, 258 (1974).[23]

### e.      Greenpeace's Statements Are Privileged

Plaintiff's defamation claims should also be dismissed because the challenged statements are privileged fair reports of judicial and official governmental proceedings. The privilege protects against defamation and related claims where, as here, a publication accurately summarizes statements in court records and government reports. N.D.C.C. § 14-02-05; *Humann v. KEM Elec. Coop.*, 450 F. Supp. 2d 1006, 1016 (D.N.D. 2006), *aff'd*, 497 F.3d 810 (8th Cir. 2007); *Soentgen*, 467 N.W.2d at 77. Even if the underlying information ultimately proves false, the privilege applies if "the reports were substantially accurate" and "concern a governmental proceeding." *White v. Fraternal Order of Police*, 909 F.2d 512, 527 (D.C. Cir. 1990). Whether the privilege applies is a question of law courts routinely decide on a motion to dismiss by comparing the publication in suit with official records, subject to judicial note.[24]

---

[23] The Greenpeace Defendants had no duty to retract their statements even after, *e.g.*, the State Historic Preservation Board found no cultural resources on the Dakota Access Pipeline route. Compl. ¶ 6. The issue was still contested by SRST and its expert, subject to ongoing litigation, and a point of public controversy. What constitutes sacred land is a subject for "[t]he academy, and not the courthouse." *Resolute I*, 302 F.Supp.3d at 1021. Further, that Greenpeace did not subsequently retract its previous statements is irrelevant to what they knew at the time of publication when actual malice is measured. *Sullivan*, 376 U.S. at 286; *McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501, 1515 (D.C. Cir. 1996); *Kahl v. Bureau of Nat'l Affairs*, 856 F.3d at 118.

[24] *See, e.g., Lee v. TMZ Prods., Inc.*, 2017 WL 4675710, at *5 (3d Cir. Oct. 17, 2017); *Wilkow v. Forbes, Inc.*, 2000 WL 631344 (N.D. Ill. May 15, 2000), *aff'd*, 241 F.3d 552 (7th Cir. 2001); *Hargrave v. Washington Post*, 2009 WL 1312513, at *1 (D.D.C. May 12, 2009), *aff'd*, 365 F. App'x 224 (D.C. Cir. 2010); *Catchai v. Fort Morgan Times*, 2015 WL 6689484, at *4 (D. Colo. Nov. 3, 2015), *judgment entered*, 2015 WL 6689485 (D. Colo. Nov. 3, 2015); *Bothuell v. Grace*, 2017 WL 892343, at *6 (E.D. Mich. Feb. 16, 2017), *report and recommendation adopted sub nom. Bothuell v. Grace*, 2017 WL 878026 (E.D. Mich. Mar. 6, 2017); *DMC Plumbing & Remodeling, LLC v. Fox News Network, LLC*, 2012 WL 5906870, at *6 (E.D. Mich. Nov. 26, 2012).

Numerous publications in suit are privileged fair reports of judicial or official government proceedings, including reports on the SRST Lawsuit, Suppl. App. Tabs 1, 3, 31, and reports on the official federal government process for permitting the pipeline, *id.* Tabs 3, 8, 9, 12, 26, 28, 30. Greenpeace's publications reporting on each of these proceedings plainly fall within the scope of fair report privilege, *White*, 909 F.2d at 527 (privilege "extends broadly to the report 'of any official proceeding,'" including allegations or findings that prompt such proceedings), and Plaintiff thus cannot claim liability for Greenpeace's privileged statements.  *See Michaelis v. CBS, Inc.*, 119 F.3d 697 (8th Cir. 1997) (liberally construing qualified privilege for fairly and accurately reporting judicial proceedings).  Instead, Greenpeace's attributions could hardly be more explicit. Suppl. App. Tab 1 (describing SRST Lawsuit); Tab 3 (hyperlinking ABC News report on action of "three federal agencies"); Tab 8 (responding to President Obama's statements); Tab 12 (reporting USACE announcement); Tab 28 (reporting impact of President Trump's memoranda); Tab 30 (hyperlinking USACE documents).[25]

### 3.      The Tortious Interference Claims Should Be Dismissed

To state a claim for tortious interference with business, a plaintiff must plead "(1) the existence of a valid business relationship or expectancy; (2) knowledge by the interferer of the relationship or expectancy; (3) an independently tortious or otherwise unlawful act of interference by the interferer; (4) proof that the interference caused the harm sustained; and (5) actual damages to the party whose relationship or expectancy was disrupted."  *Atkinson v. McLaughlin*, 462 F. Supp. 2d 1038, 1057-58 (D.N.D. 2006) (citing *Lochthowe v. C.F. Peterson Estate*, 692 N.W.2d 120, 126 (N.D. 2005)).  The requirement of an "independently tortious" act means that a plaintiff

---

[25] Hyperlinking constitutes sufficient attribution for purposes of the fair report privilege. *Adelson v. Harris*, 876 F.3d 413 (2d Cir. 2017) (conforming to answer to certified question); *Adelson v. Harris*, 402 P.3d 665 (Nev. 2017) (answering certified question).

must "prove that the defendant's conduct would be actionable under a recognized tort." *Id.* (citing *Trade 'N Post, LLC v. World Duty Free Ams., Inc.*, 628 N.W.2d 707, 720 (N.D. 2001)).  Even if defamation, for example, is alleged as that act, tortious interference requires the pleading and proving of four elements in addition to defamatory statements in order to constitute an independent tort. *Atkinson*, 462 F. Supp. 2d at 1058-59.

Plaintiff's tortious interference claim, like its defamation claims and other tort claims, must be pled and proved against each of the Greenpeace Defendants.  Yet Plaintiff lumps the Greenpeace Defendants with the alleged conduct of others who are not named in the tortious interference count.  For example, Plaintiff alleges that the Greenpeace Defendants "support[ed], fund[ed], and execut[ed] trespass and violence on Energy Transfer's land and property," but the Complaint does not (and cannot) allege that the Greenpeace Defendants or any of their associates engaged in trespass or violence.  Compl. ¶ 125.  These allegations thus lump together a large number of unnamed actors, conflate events held at various locations, do not identify which entities or actors participated in which protest event, do not link the parties to criminal prosecutions that resulted from the Dakota Access Pipeline protests, and insinuate that all of the acts of all protestors—even peaceful activities—were unlawful.  In this manner, Plaintiff fails to plead the requisite elements against Greenpeace.

It is hardly surprising that Plaintiff's tortious interference claim thus boils down to a claim that Greenpeace's expressive activities were defamatory.  *See* Compl. ¶ 125 (alleging the Greenpeace Defendants "disseminat[ed] false, misleading and defamatory statements concerning Energy Transfer's business and DAPL").  For all the reasons the defamation claims fail, *see supra* § III.A.2, so must the tortious interference claim.  *Farah*, 736 F.3d at 540; *Beverly Hills Foodland, Inc. v. United Food & Commercial Workers Union, Local 655*, 39 F.3d 191, 196-97 (8th Cir.

1994).   And moreover, with respect to the last two elements of a tortious interference claim, Plaintiff has failed to plausibly plead a direct link between Greenpeace and any actual loss of creditors or investors.   In those instances where it alleges loss of investors, Plaintiff does not specify whether and how those customers' departure flowed specifically from any allegedly deceptive or false statement.   Indeed, many of the publications in suit make clear that these letters were jointly issued by numerous organizations—and the vast majority of which are not named defendants.   *See* Suppl. App. Tabs 1, 11, 22.   Where banks did allegedly terminate their investments in the Dakota Access Pipeline, it was always in response to the very public criticism levelled by environmental groups, and not specifically in response to particular alleged defamatory statements, making the alleged damage even more attenuated.[26]   *See, e.g.*, Compl. ¶¶ 82-91. Indeed, although addressing this issue under the guise of RICO, this Court previously recognized Plaintiff's failure to tie defamatory statements by BankTrack, a defendant to the Original Federal

---

[26] Notably, Plaintiff has now recast its allegations from the prior federal complaint to try to create a false impression that banks reacted to specific statements.   For example, Plaintiff now alleges that Greenpeace and another party sent a letter to a consortium of banks, the EPA, that "falsely alleged that Energy Transfer committed 'gross violations of Native land titles,' 'deliberately desecrated documented burial grounds and other culturally important sites,' and violated human rights," after which, "in reliance on these representations, DNB, one of the banks funding DAPL, sold its equity interest in Energy Transfer, totaling approximately $3 million."   In fact, the letter was signed by over 25 advocacy groups besides Greenpeace. Compl. ¶ 84. Further, in the Original Federal Claim, Plaintiff stated that DNB actually responded "to the 'sustained public pressure campaign' and the letter to EPA," by "announc[ing] that it 'looks with worry at how the situation around the pipeline in North Dakota has developed,' and will therefore 'use its position to bring about a more constructive process to find a solution to the conflict.'"; and that DNB then stated that "[i]f these initiatives do not give appeasing answers and results, DNB will consider its further involvement in the financing of the project," two weeks after which it divested its interest in Energy Transfer.   Original Federal Claim, ECF No. 1, Compl. ¶ 239.   Thus, on the face of its prior pleading, Plaintiff conceded that DNB acted based on the larger public campaign regarding the Dakota Access Pipeline, that DNB did not immediately disengage from Energy Transfer based on one letter much less any specific statement in that letter, and only sold its financial interest when DNB's own follow-up failed to produce results.   Plaintiff's effort to conjure a more direct connection with mere sleight-of-hand must be rejected.

Claim, to any impact on banks, explaining that "[s]ome banks possibly sold loans or shares related to DAPL," but "[w]hich loans, what institutions, investors, lending partners, or contractual relationships, how and to what degree capital markets decreased, the amount of increase in cost of funding, are all left to the imagination," in Plaintiff's pleadings.  Original Federal Claim, ECF No. 87, Order at 7.[27]

### 4.    The Trespass Claims Should Be Dismissed

Trespassing includes entering any place, without license or privilege to do so, when notice against trespass is given by actual communication by the individual in charge of the premises or remaining on the property of another without authority after being requested to leave the property by a duly authorized individual.  N.D.C.C. § 12.1-22-03.  Plaintiff alleges willful entry of the pipeline's property without consent, yet fails to allege or identify anyone from Greenpeace to have engaged in a trespass.  *See* Compl. ¶ 100.  The North Dakota criminal trespass statute does not recognize a separate crime for "aiding and abetting" criminal trespass, as Plaintiff alleges, *id.* ¶ 105, and there do not appear to be any cases applying such a theory under North Dakota law.  In any case, Plaintiff does not specify which lands were trespassed, who trespassed, or even connect Greenpeace to the "thousands of protestors from around the country and the world," who "formed massive encampments."  *Id.* ¶ 50.  As this Court held for the prior federal complaints, there are no plausible allegations that 'Greenpeace directed the 'thousands' of protestors to perform illegal acts

---

[27] The banks cited by Plaintiff publicly denied that Greenpeace had any role in their decision-making, explaining: "'We did not divest from ETP as the result of pressure from Greenpeace, and would have gladly communicated this to the company if they had returned our messages,' [KLP's acting head of responsible investments Annie Bersagel told Reuters].  KLP said in March its decision was based on 'an unacceptable risk of contributing to serious or systematic human rights violations.'"  Available at https://uk.reuters.com/article/us-energy-transf-lawsuit-nordics/nordic-investors-reject-dakota-pipeline-operators-allegations-idUKKCN1B928V.

or had any control over the protestors." Original Federal Claim, ECF No. 135, Order at 8.[28]  More

critically, Plaintiff never pleads any of the requisite elements against Charles Brown specifically,

instead lumping him in with allegations and asserted claims against the "Greenpeace Defendants."

Plaintiff's trespass claims thus fail as a matter of pleading.[29]

### 5.  The Conversion Claims Should Be Dismissed

Conversion consists of a tortious detention or destruction of personal property, or a

wrongful exercise of dominion or control over the property inconsistent with or in defiance of the

rights of the owner. *Buri v. Ramsey*, 693 N.W.2d 619, 624 (N.D. 2005).  Under North Dakota law,

bad intent is not an element of conversion, thus Plaintiff's allegations that the Greenpeace

Defendants published statements encouraging (peaceful) protests is irrelevant.  *Id.*  The North

Dakota Supreme Court has recognized that in actions for conversion, an interest in specific,

identifiable property must be pleaded and proved.  *See Napoleon Livestock Auction, Inc. v.

Rohrich*, 406 N.W.2d 346, 354 (N.D. 1987).  However, Plaintiff has failed to identify with

particularity which property they claim to have been converted, or identify any individual

---

[28] For example, while Plaintiff includes inflammatory allegations that Greenpeace sent "direct action trainers" to North Dakota in October 2016 to lead "daily direct action trainings," Compl. ¶ 50—whatever that may entail—the complaint fails to identify a single individual purportedly associated with Greenpeace who engaged in this "training" or whether such alleged, unnamed individuals did so at the direction of the named Defendants. Allegations that Greenpeace "held a donation drive in ten or more cities across North America," Compl. ¶ 51, and assisted a non-party in giving "$500,000 in seed money to the most extreme anti-DAPL protestors," *id.* ¶ 51, fail to identify (or name as a defendant) any individual associated with Greenpeace who engaged in these acts, identify any of the alleged "thousands of protestors," *id.* ¶ 51, Greenpeace purportedly "train[ed]" to engage in "direct action and criminal sabotage," *id.* ¶ 25, identify any communications by Greenpeace or any of its employees discussing these activities, or identify when any of these alleged events took place.  Thus, Plaintiff's Complaint fails because it seeks to mask the absence of necessary factual specificity with "irrelevant hyperbole," Original Federal Claim, ECF No. 88, Order at 5, and vague, inflammatory allegations.

[29] The Greenpeace Defendants incorporate by reference the additional grounds for dismissal of Plaintiff's trespass claims set forth in the brief in support of Greenpeace Fund's motion to dismiss.

Greenpeace agent who engaged in "detention or destruction" or "wrongful … dominion or control over" any Energy Transfer property. Instead, as with its trespass claim, Plaintiff lumps the Greenpeace Defendants with thousands of protestors and other non-parties to claim that Greenpeace's political speech resulted in conversion. Such allegations are insufficient to establish conversion as a matter of law, and there is no authority in North Dakota for an "aiding and abetting" conversion claim premised on such vacuous allegations.

### 6.      The Conspiracy Claim Should Be Dismissed

Plaintiff's conspiracy claim requires "a combination of two or more persons acting in concert to commit an unlawful act or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another and an overt act that results in damage[s]." *Kuhn v. Chesapeake Energy Corp.*, 2012 WL 4442798, at *5-6 (D.N.D. Sept. 25, 2012). "To constitute a concerted action, the plaintiffs [need] to present evidence of a common plan to commit a tortious act, the participants knew of the plan and its purpose, and the participants took substantial affirmative steps to encourage the achievement of the result." *Ward v. Bullis*, 748 N.W.2d 397, 407-08 (N.D. 2008). Plaintiff has not plausibly pled a cognizable underlying tort committed by the Greenpeace Defendants, that Greenpeace acted with the named defendants (including a non-entity that cannot be subject to suit) in concert to commit any tort, that they agreed to any common plan, or that Plaintiff was damaged in a manner that can be attributed to Greenpeace. Indeed, Plaintiff only alleges that Greenpeace "shared and agreed upon the same conspiratorial objective, which was to stop construction of DAPL and harm Energy Transfer." Compl. ¶ 129. This so-called "conspiratorial objective" only amounts to a shared parallel concern regarding the potential environmental and cultural impacts that could result from the Dakota Access Pipeline's construction. Shared political beliefs are constitutionally protected, *see supra* § III.A.2.a, and cannot form the basis of a conspiracy claim.

Accordingly, Plaintiff's conspiracy claim, like its other tort claims against Greenpeace, must be dismissed.

**B.      The Court Should Dismiss GPI and Charles Brown for Lack of Jurisdiction Pursuant to Rule 12(b)(2)**

Based on Plaintiff's allegations, personal jurisdiction over GPI and Charles Brown is inconsistent with due process.[30]   First, Defendant GPI is organized and located in the Netherlands. Compl. ¶ 15.   As a foreign party, this Court's jurisdiction over GPI depends on application of the North Dakota long-arm statute.   *DakColl, Inc. v. Grand Cent. Graphics, Inc.*, 352 F. Supp. 2d 990, 993–94 (D.N.D. 2005) (citing *Dakota Indus., Inc. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir. 1994)).   The personal jurisdiction inquiry involves two steps: (1) the court must determine whether the State of North Dakota would accept jurisdiction under the facts of this case; and (2) the court must determine whether the exercise of jurisdiction comports with constitutional due process restrictions.   *Lakin v. Prudential Securities, Inc.*, 348 F.3d 704, 706-707 (8th Cir. 2003) (citing

---

[30] If the Court does not otherwise dismiss this action, it may exercise its discretion to transfer venue under 28 U.S.C. § 1404(a), as each factor in the "significant contacts" analysis used by this Court, *see Avery v. Ward,* 2017 WL 5451743, at *7 (D.N.D. 2017), supports transfer to the District of Columbia.   Indeed, while the Greenpeace Defendants argued for transfer of venue in response to the Original Federal Claim, *see* ECF No. 40 at 55-61, now that the federal RICO claims have been dismissed and the chief remaining claims sound in defamation, the venue analysis even more strongly favors transfer.   First, the location of witnesses in this case—the factor generally afforded the greatest weight, *Zidon v. Pickrell*, 344 F. Supp. 2d 624, 634 (D.N.D. 2004)—weighs in favor of transfer because the authors of the publications at issue work out of Greenpeace's offices, primarily in the District of Columbia.   ***None*** of the statements were initially published in this Judicial District, and are not alleged to have harmed any party in North Dakota as Plaintiff is neither headquartered nor incorporated here.   *See* Suppl. App.   Second, judicial economy favors transfer given the parallel SRST litigation still pending in the D.C. District Court.   Third, North Dakota law does not apply to Plaintiff's defamation claims because the locus of the Greenpeace Defendants' speech activities is their offices, and the jurisdiction where those offices sit thus has the greatest interest in adjudicating these tort claims.   *See supra* 10-12.   Although Plaintiff has tried to create more of a locus in North Dakota by adding Red Warrior Society as a defendant, as noted previously, *see supra* n. 6, it is not an entity that can be sued and the fraudulent joinder of this alleged entity should not change the venue analysis.

*Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1392 (8th Cir. 1993)).  As this Court has noted, "[w]hen determining whether personal jurisdiction over a party is consistent with due process, a court considers five factors: (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relationship of those contacts with the cause of action; (4) the state's interest in providing a forum for its residents; and (5) the convenience or inconvenience to the parties."  *Energy Transfer Equity, LP v. Greenpeace Int'l*, No. 1:17-CV-00173-BRW, 2018 WL 4677787, at *5 (D.N.D. July 24, 2018) (dismissing BankTrack from Plaintiff's original federal suit).

Here, Plaintiff has not come close to showing minimum—or indeed any—contacts between GPI and North Dakota, even on a third try.  The Complaint does not allege GPI transacts business in North Dakota either directly or through agents; took any actions within the state; derives substantial revenue in the state; is registered to do business in the state; or has consented to personal jurisdiction.  GPI's only alleged ties to the United States are its general organizational relationships with GP Inc. and GP Fund.  Compl. ¶¶ 14-15.  Further, for the same reasons expressed in this Court's Order dismissing BankTrack from Plaintiff's Original Federal Claim, the other four factors also suggest that exerting jurisdiction over GPI would offend due process.[31]  Original Federal Claim, ECF No. 87, Order at 11 ("Is personal jurisdiction established in North Dakota when a Dutch foundation sends letters to a California and a New York Bank urging them not to fund a North Dakota project operated by two Delaware partnerships headquartered in Dallas, Texas?

---

[31] For example, Plaintiff pleads no facts that GPI made any statements in North Dakota or intended to cause injury there; indeed, not a single one of the 82 total statements challenged by Plaintiff is even attributed to GPI.  And, any alleged reputational harm to Plaintiff would not primarily accrue in North Dakota, because Plaintiff is not based there.  *See supra* § II.A.3.

Based on the allegations in this case, personal jurisdiction over BankTrack is inconsistent with due process.").

      With respect to Defendant Brown, the attempt to impose this Court's jurisdiction on a defendant so removed from any relationship with this State, or any unlawful activity anywhere, is outrageous.  Brown resides in Virginia.  Compl. ¶ 19.  He is alleged to have engaged in campaigns in Louisiana and Pennsylvania, not North Dakota, *id.* ¶¶ 19, 96, but there are no plausible allegations that he engaged in any criminal activity, or participated in a civil conspiracy.  Plaintiff does not allege the existence of, much less the nature and quality of, any other contacts whatsoever between Brown and North Dakota.  Indeed, as this Court already observed in Plaintiff's Original Federal Claim: "Notably, Charles Brown was not employed by Greenpeace until after the allegations in the Amended Complaint occurred, and his alleged conduct appear to have occurred in Louisiana."  Original Federal Claim, ECF No. 135, Order at 2 n.8.

## IV.    CONCLUSION

      For the foregoing reasons, the Greenpeace Defendants request that the Court enter an order granting Greenpeace's Motion to Dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, dismissing the Complaint in its entirety and with prejudice; or in the alternative transferring this action to the United States District Court for the District of

Columbia pursuant to 28 U.S.C. § 1404(a), and granting such further relief as the Court deems just and proper.

Dated:  April 12, 2019

Respectfully submitted,

/s/   *Derrick Braaten*

Derrick Braaten, ND Bar # 06394
BRAATEN LAW FIRM
109 North 4th Street, Suite 100
Bismarck, ND 58501
701-221-2911
derrick@braatenlawfirm.com

Lacy H. Koonce, III (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
(212) 603-6467
lancekoonce@dwt.com

Laura Handman (*pro hac vice*)
Lisa Zycherman (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, DC 20006-2401
(202) 973-4200

laurahandman@dwt.com
lisazycherman@dwt.com

*Attorneys for Defendants Greenpeace International, Greenpeace, Inc., and Charles Brown*

38

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2019, the following parties were not served, as their respective addresses are unknown:


Red Warrior – address unknown


Cody Hall – address unknown


Krystal Two Bulls – address unknown



DATED this 12th day of April, 2019.


/s/ *Lacy H. Koonce, III*
Lacy H. Koonce, III